# Illinois Official Reports

## Appellate Court

---

### *In re L.W.*, 2016 IL App (3d) 160092

---

| | |
|---|---|
| Appellate Court Caption | *In re* L.W., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. L.W., Respondent-Appellant). |
| District & No. | Third District<br>Docket Nos. 3-16-0092, 3-16-0093 cons. |
| Filed | July 13, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Will County, Nos. 14-JD-104, 14-JD-180; the Hon. Paula A. Gomora, Judge, presiding. |
| Judgment | Affirmed as modified. |
| Counsel on Appeal | Michael J. Pelletier and Bryon Kohut, both of State Appellate Defender's Office, of Ottawa, for appellant.<br><br>James Glasgow, State's Attorney, of Joliet (Thomas D. Arado, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | PRESIDING JUSTICE O'BRIEN delivered the judgment of the court, with opinion.<br>Justices Carter and Wright concurred in the judgment and opinion. |

**OPINION**

¶ 1     L.W. appeals from the trial court's order that lifted the stay on the sentence imposed on the fourth petition for indirect criminal contempt. Specifically, L.W. argues he is entitled to a credit for time spent in custody on multiple proceedings associated with his two juvenile delinquency cases. We affirm as modified.

¶ 2                                    FACTS

¶ 3     On March 25, 2014, in case No. 14-JD-104, the State filed a juvenile delinquency petition that alleged L.W. had committed the offense of domestic battery (720 ILCS 5/12-3.2(a)(2) (West 2014); 705 ILCS 405/5-101 *et seq.* (West 2014)). On the same date, L.W. was taken into custody. On April 8, 2014, L.W. was released into the custody of his mother subject to several restrictions.

¶ 4     On May 19, 2014, in case No. 14-JD-180, the State filed a supplemental juvenile delinquency petition. The supplemental petition alleged that L.W. had committed the offense of resisting a peace officer (720 ILCS 5/31-1 (West 2014); 705 ILCS 405/5-101 *et seq.* (West 2014)). On the same day, L.W. was taken into custody. On May 23, 2014, L.W. was released and ordered to cooperate with the Mental Health Juvenile Justice program.

¶ 5     On June 3, 2014, the State filed a petition for an adjudication of indirect criminal contempt. L.W. was taken into custody on June 16, 2014.

¶ 6     On July 2, 2014, the parties presented a plea agreement to the court. In the agreement, L.W. admitted to the offenses of domestic battery, resisting a peace officer, and the allegations in the contempt petition. On the underlying offenses, the court entered a judgment of delinquency and sentenced L.W. to concurrent sentences of one year of probation. On the contempt petition, the court sentenced L.W. to 90 days of detention with credit for 20 days served. The court stayed the remaining 70 days pending L.W.'s compliance with probation. On July 7, 2014, the court entered an agreed order stating that L.W. had 28 days of custody credit, and therefore, the court amended the mittimus to stay 62 days of the sentence.

¶ 7     On July 23, 2014, the court lifted the stay on the contempt sentence. L.W. was released from custody on September 22, 2014, after serving 62 days.

¶ 8     On October 22, 2014, the State filed a second petition for an adjudication of indirect criminal contempt. On October 29, 2014, the court found probable cause to believe L.W. was in indirect criminal contempt. L.W. was not detained, but he was ordered to obey every reasonable request of his caretakers and attend school on time every day.

¶ 9     On November 20, 2014, the State filed a third petition for an adjudication of indirect criminal contempt. The petition alleged that L.W. had failed to comply with the October 29, 2014, order. The court found L.W. in contempt and remanded him into custody.

¶ 10    On December 18, 2014, L.W. appeared before the court in custody. Pursuant to a plea agreement, L.W. admitted the allegations in the third contempt petition, and the State withdrew

its second contempt petition. The court sentenced L.W. to 90 days of detention with credit for 28 days served. The court set L.W.'s release date as February 18, 2015.[1]

¶ 11    On June 10, 2015, the State filed a petition to revoke L.W.'s probation. At the conclusion of the June 19, 2015, first appearance on the State's petition, the court remanded L.W. into custody and set his release date as June 26, 2015.

¶ 12    On July 13, 2015, the State filed a fourth petition for an adjudication of indirect criminal contempt. The petition alleged that L.W. violated his probation. On July 14, 2015, the court remanded L.W. into custody. L.W. was released from custody on August 3, 2015.

¶ 13    On August 25, 2015, the State filed a motion for a detention hearing *instanter*. On September 9, 2015, the court remanded L.W. into custody.

¶ 14    On October 5, 2015, the parties presented a plea agreement to the court. In the agreement, L.W. admitted to the allegations of the pending petition to revoke probation in case Nos. 14-JD-104 and 14-JD-180, as well as a battery charge that was filed in case No. 15-JD-132. The court revoked L.W.'s probation and resentenced him to one year of probation. The court found L.W. to be delinquent in case No. 15-JD-132. The court also found L.W. to be in indirect criminal contempt and sentenced L.W. to 179 days of detention. The court awarded L.W. credit for 26 days served. The court stayed the remaining 153 days of the sentence pending L.W.'s compliance with probation and released L.W. from custody.

¶ 15    On November 30, 2015, the State filed a motion to lift the stay on L.W.'s contempt sentence. On February 11, 2016, L.W. filed a motion to withdraw his guilty plea. In his motion, L.W. argued, in relevant part, that he was entitled to an additional 174 days of custody credit that was derived from the time he spent in custody as a result of the underlying charges, violations of probation, contempt for violating pretrial conditions, and contempt for violating conditions of probation.

¶ 16    On February 11, 2016, both motions were called for a hearing. The court ruled that it did not have jurisdiction to address L.W.'s motion to withdraw his guilty plea. Prior to the arguments on the motion to lift the stay, defense counsel stated that L.W. had not received custody credit for the July 14 to August 3, 2015, period that he spent in custody in connection with the fourth contempt petition. The State agreed that L.W. was entitled to "19 days" of custody credit, which left 133 days stayed. The court awarded 19 additional days of custody credit and granted the State's motion to lift the stay on the fourth contempt sentence. The court ordered L.W. to serve 30 days in custody and stayed the remaining 103 days of the sentence. On February 24, 2016, L.W. filed a notice of appeal.

¶ 17                                          ANALYSIS

¶ 18                                          I. Jurisdiction

¶ 19    Initially, L.W. anticipates the State's argument that this court does not have jurisdiction to address the custody credit issue. L.W. argues that the February 2016 order that lifted the stay of the sentence was final and appealable. As expected, the State argues that L.W. could only appeal from the October 5, 2015, order that imposed the contempt sentence as it was the final and appealable order. See *People v. Michel*, 230 Ill. App. 3d 675, 677 (1992) (a sentence is the

---

[1]The period from December 18, 2014, to February 18, 2015, is 63 days in length, and L.W. received custody credit for 28 days served, which is a total of 91 days.

final judgment in a criminal case). The State contends that L.W.'s failure to file a notice of appeal within 30 days of the October 5, 2015, order divested this court of jurisdiction. See Ill. S. Ct. R. 604(d) (eff. Dec. 3, 2015). Upon review, we find that we have jurisdiction to review this case because the trial court retained jurisdiction by staying the sentence, which tolled the 30-day time limit.

¶ 20 The parties' arguments turn on our determination of whether the court's October 5, 2015, order was final and appealable. Generally, to perfect an appeal after a plea of guilty and sentence, the convicted individual must file a notice of appeal within 30 days of the entry of the final judgment. *Id.* In proceedings under the Juvenile Court Act of 1987 (Act) (705 ILCS 405/1-1 *et seq.* (West 2014)), the dispositional order results in the final judgment. *In re J.N.*, 91 Ill. 2d 122, 127 (1982). The instant appeal arises from a contempt proceeding that was collateral to the delinquency proceeding. Therefore, the contempt judgment was not appealable until the penalty was imposed. *In re Marriage of Gutman*, 232 Ill. 2d 145, 153 (2008).

¶ 21 On October 5, 2015, the court imposed a 179-day sentence of imprisonment on the fourth contempt petition. At that time, the court stayed 153 days of the sentence pending L.W.'s compliance with his underlying probation sentence. The court, therefore, retained jurisdiction to ensure that L.W. complied with the terms of his probation and enforce the judgment. See *People v. Strickland*, 2015 IL App (3d) 140204, ¶ 15 (trial court retained jurisdiction to enforce its judgment where it stayed defendant's sentence pending defendant's compliance with outpatient treatment). L.W. failed to comply with the requirements of the stay, and on February 11, 2016, the trial court enforced its judgment by lifting the stay. The trial court's order then became final and appealable. See *id*. L.W. filed his notice of appeal on February 24, 2016, less than 30 days after the trial court lifted the stay. As a result, we have jurisdiction to address L.W.'s appeal. See *People v. Wilk*, 124 Ill. 2d 93, 105 (1988); Ill. S. Ct. R. 604(d) (eff. Dec. 3, 2015).

¶ 22 II. Sentence Custody Credit

¶ 23 L.W. raises two arguments with respect to the amount of sentence custody credit he is entitled to receive. First, L.W. argues that he is entitled to 255 days of custody credit for the time he spent in detention on (1) the offenses that resulted in the original concurrent sentences of probation, (2) a petition to revoke that probation, and (3) two other contempt actions derived from violations of the terms of his probation. Second, and in the alternative, L.W. argues that the trial court miscalculated the custody credit it awarded, and as a result, he is entitled to at least two additional days of custody credit.

¶ 24 In response, the State argues that L.W. is not entitled to custody credit derived from his prior contempt sentences and the petition to revoke probation because those were separate proceedings. However, the State concedes that L.W. is entitled to two additional days of sentencing credit that were omitted from the sentencing order. Upon review, we find that L.W.'s fourth contempt sentence was the result of an independent proceeding, and therefore, he is only entitled to sentencing credit for the time he spent in custody in connection with the contempt proceeding.

¶ 25 "Courts have the inherent power to enforce their orders by way of contempt." *In re G.B.*, 88 Ill. 2d 36, 41 (1981). A court's contempt power is not dependent on constitutional or legislative grant and may not be restricted by legislative enactment. *Id*. Our supreme court has viewed the

contempt power as a means to enforce the terms of a juvenile's probation and as an alternative to the statutorily provided enforcement mechanisms. See *In re Baker*, 71 Ill. 2d 480, 485 (1978) (holding the court's use of its contempt power to enforce a supervision order was not erroneous despite the existence of alternative remedies in the Act); see also *G.B.*, 88 Ill. 2d at 42-43 (noting that "finding a minor in contempt and placing the minor on probation as punishment for contempt have been approved by the [supreme court] as an alternate procedure to those provided for in the Act in dealing with minors who contumaciously violate lawful court orders"). Following a contempt finding, a juvenile may be sentenced to a term of custody in a juvenile detention facility. See, *e.g.*, *G.B.*, 88 Ill. 2d at 45 (finding the relevant facts of the contumacious conduct justified the imposition of a 60-day detention); *In re J.A.*, 108 Ill. App. 3d 426, 428 (1982) (finding the trial court had authority to place the minor in the custody of a juvenile facility for contempt of the school attendance order).

¶ 26    The Act entitles a minor to custody "credit on the sentencing order of detention for time spent in detention." 705 ILCS 405/5-710(1)(a)(v) (West 2014). However, because a contempt proceeding "is an original special proceeding, collateral to and independent of, the case in which the contempt arises," the custody credit is limited to the time the minor spent in custody in connection with the contempt petition. *People ex rel. Scott v. Silverstein*, 87 Ill. 2d 167, 172 (1981).

¶ 27    Applying this analysis, we find that L.W. is entitled to two additional days of custody credit. After the State's filing of the fourth contempt petition, L.W. was held in custody from July 14 to August 3, 2015, and from September 9 to October 5, 2015—a total of 48 days. On October 5, 2015, the trial court imposed the sentence at issue, and it awarded 27 days of custody credit. In February 2016, the court lifted the stay on the fourth contempt sentence and awarded L.W. 19 additional days of custody credit. This left two days of custody credit unapplied, and therefore, we amend the mittimus to apply this credit.

¶ 28    In reaching our decision we have considered *People v. Hutchcraft*, 215 Ill. App. 3d 533 (1991), which L.W. cites in support of his argument that he is entitled to 255 days of sentence custody credit. The defendant in *Hutchcraft* was originally convicted of burglary and sentenced to 30 months' probation. *Id*. at 535. While the defendant was on probation, the State filed multiple petitions to "revoke probation, or in the alternative to hold defendant in contempt." *Id*. at 536. The State's petitions were the result of Hutchcraft's failure to comply with orders of the court. *Id*. at 535-36. On two of the petitions, the trial court found Hutchcraft in contempt and imposed sentences of incarceration. *Id*. Following the revocation of his probation and resentencing to three years' imprisonment, Hutchcraft appealed arguing that he was entitled to additional custody credit derived, in part, from his contempt sentences. *Id*. at 534. The appellate court awarded Hutchcraft custody credit against his underlying sentence for the time he spent in custody as a result of the contempt proceedings. *Id*. at 539.

¶ 29    The instant case differs from *Hutchcraft* in one integral way—L.W. seeks custody credit against his fourth contempt sentence instead of a sentence imposed on the underlying proceeding. As we noted *supra*, each contempt proceeding is original and independent of the underlying cause of action. See *Silverstein*, 87 Ill. 2d at 172. Therefore, custody credit incurred for serving time on another contempt proceeding, even if derived from the same sentence of probation, cannot be applied as a custody credit to a subsequent contempt sentence. To allow contempt custody credits to be applied to a subsequent contempt sentence would dilute the court's contempt power and require the imposition of increasingly greater sentences to

encourage a contemnor's compliance with an order of the court. *People v. Otten*, 228 Ill. App. 3d 305, 310 (1992); *People v. Brents*, 115 Ill. App. 3d 717, 721 (1983). Accordingly, we conclude that L.W. is only entitled to two additional days of custody credit (time spent in custody in connection with the fourth contempt petition).

¶ 30                                                    CONCLUSION
¶ 31          The judgment of the circuit court of Will County is affirmed as modified.

¶ 32          Affirmed as modified.